## LOUISVILLE & N. R. CO. v. HUSSEY-HOBBS TIE CO.

### No. 8915.

Circuit Court of Appeals, Eighth Circuit.

March 14, 1931.

H. R. Small, of St. Louis, Mo., for appellant.

Edward A. Haid, of St. Louis, Mo. (Fordyce, Holliday & White and Walter R. Mayne, all of St. Louis, Mo., on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

Suit was instituted by Hussey-Hobbs Tie Company, as plaintiff, in the circuit court of the city of St. Louis, Mo., seeking to recover against the defendant, Louisville & Nashville Railroad Company, on certain freight charges alleged to have been erroneously exacted on shipments of crossties in carload lots in Florida. The cause was transferred to the federal court on the ground of diversity of citizenship; the case was tried to the court without a jury and resulted in a judgment for the plaintiff.

The original petition, later divided into 240 counts, one as to each carload of ties, gives a brief statement of plaintiff's claim, as follows:

"Plaintiff for its cause of action states that at various times between the dates of July 1, 1926, and April 1, 1927, it tendered to defendant for shipment and transportation certain crossties from points at Laurel Hill, Florida, Argyle, Florida, De Funiak Springs, Florida, Galliver, Florida, Mossey Head, Florida, Ponce de Leon, Florida, Crestview, Florida, Milton Bayou Siding, Florida, Bearhead, Florida, and Milligan, Florida, all destined to Pensacola, Florida; that the defendant did transport said crossties for plaintiff, and the defendant charged the plaintiff an incorrect rate and a rate not covered by its tariff then in force and effect, known as L. & N. R. R. Tariff G. F. O. No. 85-B, effective September 30th, 1923, and by reason thereof the defendant has collected from the plaintiff the sum of Five Thousand, One Hundred Twenty-two Dollars and fifty-seven Cents ($5,122.57) more than it should have received had the defendant charged the plaintiff the proper tariff rate, for the transportation of said crossties, then effective under said tariff therein referred to."

And in each count is found, among other things, the allegation that there was unlawfully collected certain amounts on each shipment without any authority of law or any authority of the tariffs then in force and effect at the time of said shipments.

At the trial plaintiff offered in evidence a duly certified copy of Florida Classification No. 6, I. C. C. No. 14, issued August 5, 1922. This Florida Classification No. 6 comprises certain rules and regulations for the transportation of freight, and provides that wooden crossties in carload lots are within the Classification known as "P." Plaintiff then

offered in evidence a duly certified copy of L. & N. R. R. Tariff G. F. O. No. 85-B, I. C. C. No. A-15392, being a proportional freight tariff issued August 21, 1923, of Florida intrastate mileage rates on classes and commodities. This freight tariff, known as No. 85-B, provides for rates on wooden articles in carloads, among them being crossties, and that the rate in cents per carload is determined under classification P according to the distance between the points hauled and providing, among other things, that such shipments per carload of more than 70 miles and less than 80 miles is 1,600 cents. The offer of No. 85-B was objected to on the ground that it had no application whatsoever to the shipment in question. Plaintiff also offered in evidence as a sample of each of the shipments complained of and, in particular, supporting the allegations of count 1 of its petition, a bill of lading dated March 16, 1927, wherein is found the railroad company receipt of a car of pine ties at De Funiak Springs from Hussey-Hobbs Tie Company, consigned to L. G. Johan, and in care of M. S. B. & P. R. R., destination Pensacola, Fla., and also a freight bill showing the same consignee, point of origin and destination, name of shipper, and acknowledging payment, the receipted expense bill at destination gives the article shipped as a car of pine ties—

|  | Weight | Rate | Freight |  |
|---|---|---|---|---|
| (Total) | 99200 |  |  |  |
| (weight of car) | 37300 | 1600 | 41.27 |  |
| (net weight) | 61900 | 24M | 3.60 | (Demurrage |
|  |  |  |  | & switching) |
|  |  |  | 44.87" |  |

It was agreed by the parties that all of the 240 shipments originated at a point in the state of Florida, the shipper being Hussey-Hobbs Tie Company and the consignee being in each case an individual in care of the M. S. B. & P. R. R., or to the railroad in care of some individual, the destination in each case being Pensacola, Fla. In addition to the formal proof referred to above, for the purpose of showing a demand for a refund, the plaintiff offered in evidence a letter from an officer of the defendant company stating, among other things, as follows:

"I have your personal favor of the 8th instant relative to the above claims. This question has been considered by our General Freight Office and we cannot protect any other rate than the class 'P' rate per car of 24,000 pounds, excess in proportion, as published in our GFO (General Freight Office) 111-C, and papers in your claims are returned respectfully declined."

Plaintiff also introduced as a witness Mr. R. C. Hobbs, a member of the plaintiff firm, who testified as follows: The ties that were shipped were used in the M. S. B. & P. Railroad; that line is a line extending north from Pensacola, partly in Florida and partly in an adjoining state; the line at that time was 155 miles long, about 50 miles in Florida and the balance in Alabama; we furnished approximately 200,000 ties for rehabilitation, making new tracks in Pensacola, Fla., and we shipped about 100,000 on the Louisville & Nashville points to take care of this work; the furnishing of the ties was under contract; I cannot tell whether any of the ties moved out of the state of Florida; the contract was to make the delivery on the M. S. B. & P. line; these particular ties involved in this law suit all originated in Florida and were destined to Pensacola, Fla.; when we delivered on to that line our contract was fulfilled; the shipments all originated in Florida and were delivered in Florida.

The claim of plaintiff is that the destination rate in cents per carload under the head "P" of Tariff 85-B is all defendant could charge regardless of the weight of the crossties in the car. The contention of the defendant, on the other hand, is that "per carload" as thus used in the tariff means per carload of 24,000 pounds, excess in proportion.

Defendant also contends that plaintiff failed to introduce any evidence to support the claim that proportional tariff 85-B applied to these shipments, and that the court should have sustained defendant's objection thereto. Tariff No. 85-B provides:

"Will not apply on interstate traffic * * * proportional freight tariff * * * applying between junction points and junction and local points on the L. & N. R. R. in Florida * * * applicable only on traffic received from or delivered to connecting lines having origin, destination and entire transportation within the State of Florida, except where lower rates are in effect in other tariffs. * * *

"Proportional rates on the Louisville and Nashville Railroad on joint traffic having origin, destination and entire transportation within the State of Florida.

"Rule No. 1: Rates named herein will not apply where through rates are in effect as published in other tariffs, which are lower than would obtain by use of the rates shown in this tariff.

"Rule No. 2: Rates named herein must be applied from stations on the Louisville & Nashville Railroad to junction points on the Louisville & Nashville Railroad, on traffic

destined to points on connecting lines (except as provided for in Rule No. 5)."

From the above it will be observed that 85-B is probably intended to apply to rates on freight which moved over two intrastate Florida railroads. The evidence does not in any place disclose that it is applicable to freight moving from a point in Florida to Pensacola if the traffic ends at that point of destination. If there is an ambiguity on the question of whether or not the proportional tariff 85-B applied to the shipments in question, then consideration should be given to the testimony of Mr. J. H. Tench that: If the shipment in question were going from a local station on the Louisville & Nashville Railroad to a local station on the Louisville & Nashville Railroad, namely, Pensacola, and not going beyond, this tariff would not apply; the proper tariff under such a situation would be the local tariffs and proportional tariff No. 85-B could have no application to a purely local movement on the Louisville & Nashville; there was in existence at that time another tariff which would govern it.

In the light of the letter which has hereinbefore been mentioned, the tariff referred to by the witness was probably "GFO 111-C." There is no direct evidence in the record that tariff 85-B applied to the shipments in question. The evidence that the freight was at Pensacola transferred to another railroad might indicate a continuous shipment, were it not that the freight here in question was railroad ties and intended for use by the railroad receiving it.

 Plaintiff contends that the defendant should have produced any other tariff applicable to the shipments in question and that the failure of the defendant to produce any other tariff raises a presumption that if produced it would operate to the prejudice of the appellant railroad company. It was incumbent upon the plaintiff to plead and prove all the essential elements of its cause of action. No cause of action could here obtain without the allegation that tariff 85-B applied to these shipments. It was not the duty of the defendant to introduce evidence to substantiate plaintiff's cause of action.

Claim is also made that tariff 85-B should be considered as applicable because the rates assessed and collected were the identical rates per carload for which collections were made, the only difference between appellant and appellee being in the manner of computing the freight charges due to the difference in the interpretation of the classification provisions. There is no evidence in the record, however, that the rates were assessed and collected under tariff 85-B. The point at issue was: What was the proper tariff under which these carload lots of ties were shipped and what were the proper freight charges under such tariff?

In the absence of any evidence that tariff 85-B applied to the shipments in question, its admission in evidence was error and the case will have to be reversed for that reason. The other question presented as to the interpretation of that tariff, 85-B, in connection with Classification No. 6 may not arise in another trial, and decision therefore is unnecessary at this time. For the error in admitting in evidence tariff 85-B without some showing that it was applicable to the shipments in question, the case is reversed and remanded.

Reversed.